**Devon CLARKE, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**Civil Action No. 2:96cv1020.
Criminal Action No. CR 88–126–N.**

United States District Court,
E.D. Virginia,
Norfolk Division.

Feb. 20, 1997.

Devon Clarke, Ft. Dix, NJ, pro se.

## OPINION AND ORDER

DOUMAR, District Judge.

This matter is before the Court on petitioner's *pro se* motion under 28 U.S.C. § 2255 to vacate, set aside, or correct a sentence by a person in federal custody. Petitioner has also filed a request to substitute a proofread copy of his Section 2255 motion and brief for the copies he originally filed. That request is hereby **GRANTED**. For reasons discussed below, however, the petitioner's Section 2255 motion is untimely, and therefore is **DENIED**. In addition, Diane S. Lepley, Esq. has filed—purportedly on behalf of the petitioner—a "Motion for Leave to Enter Appearance" on this matter. For reasons discussed below, Ms. Lepley's motion to appear *pro hac vice* also is **DENIED**.

### I. Background

Petitioner and his codefendants were charged in a thirteen-count indictment with a variety of drug-related offenses. Counts One, Two, Four, Six, Seven, Eight, Twelve, and Thirteen specifically charged petitioner with criminal activity. On January 17, 1989, petitioner pled guilty to a superseding criminal information, which charged petitioner with engaging in a continuing criminal enterprise in violation of 21 U.S.C. § 848. In return, all eights counts of the indictment specifically charging the defendant were dismissed.

On March 29, 1989, this Court sentenced petitioner to a term of one hundred and seventy-five (175) months imprisonment. The Fourth Circuit affirmed both this Court's acceptance of petitioner's guilty plea and this Court's imposition of sentence on February 26, 1990. *United States v. Clarke,* No. 89–5085, 1990 WL 26893 (4th Cir.1990). The time period in which petitioner could have filed a petition for writ of certiorari with the United States Supreme Court lapsed ninety days later on May 27, 1990. S.Ct.R. 13(1).

Well over six years later, on October 21, 1996, petitioner filed in this Court the instant *pro se* Section 2255 motion, offering to the Court a wide selection of arguments supporting his motion, including (1) that petitioner's trial counsel was ineffective, (2) that petition-er's guilty plea was not knowing and voluntary, (3) that petitioner's appellate counsel was ineffective, (4) that this Court violated petitioner's due process rights in making unreasonable inferences from evidence produced at sentencing, (5) that this Court failed to consider relevant Sentencing Guideline factors in imposing a fine, and (6) that petitioner should have received a reduction for acceptance of responsibility despite his refusal to admit certain conduct. On November 8, 1996, petitioner requested that this Court substitute a proof-read copy of his *pro se* motion and supporting brief for the motion and brief filed on October 21, 1996. Also on November 8, 1996, Diane S. Lepley, Esq. filed her motion for leave to enter an appearance *pro hac vice* in this case.

As requested by petitioner, the Court only considered the proofread documents that petitioner submitted on November 8, 1996.

### II. Analysis

The statute upon which petitioner relies, 28 U.S.C. § 2255, as amended on April 24, 1996 by Section 105 of the Antiterrorism and Effective Death Penalty Act of 1996, P.L. 104–132, (hereinafter AEDPA), provides in relevant part,

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.
>
> . . . .
>
> A 1–year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—
>
> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was

prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Thus, to determine whether the petitioner timely filed his Section 2255 motion, the Court must measure one year from the most recent date provided by subsections (1) through (4) of Section 2255.

Subsection (1) directs the Court to measure when petitioner's conviction became final. Section 2255 does not define exactly when a judgment of conviction is final. Possible dates include the date on which this Court issued judgment, the date on which the Fourth Circuit affirmed this Court, and the date after which the petitioner could no longer petition the Supreme Court for a writ of certiorari. For the sake of this motion only, this Court will assume the latest possible date—May 27, 1990, the date on which petitioner could no longer seek direct review by the Supreme Court. *See United States v. Bazemore,* 929 F.Supp. 1567, 1569–70 (S.D.Ga.1996) (assuming without deciding that a conviction becomes final under Section 2255 upon expiration of the time for seeking direct review).

Subsections (2) and (3) do not apply in this case. Petitioner makes no claim that a new Supreme Court case retroactively applies to his motion, nor does petitioner claim that he was prevented from filing this motion by government action.

On March 29, 1989, this Court issued an order adjudging petitioner guilty of violating 21 U.S.C. § 848 and sentencing petitioner to a term of imprisonment. Thus, under subsection (4), March 29, 1989 is the date by which the facts allegedly supporting petitioner's claims regarding his plea and sentencing could have been discovered. In addition, petitioner could have discovered the facts allegedly supporting petitioner's claim that appellate counsel was ineffective by February 26, 1990, the date on which the Fourth Circuit affirmed this Court.

Thus, subsection (1) provides petitioner with the most recent date, May 27, 1990, from which this Court must measure one year to determine whether petitioner timely filed his motion. One year after May 27, 1990 is May 27, 1991. Petitioner filed his motion on October 21, 1996, more than five years after the limitation period ended on May 27, 1991. Therefore, by its own plain language, Section 2255 time-bars petitioner from bringing his Section 2255 motion.

Undoubtedly, prior to the AEDPA's amendments to Section 2255, no specific limitations period applied to Section 2255 motions. Petitioner filed the instant motion, however, nearly six months after the new one-year limit became effective on April 24, 1996. The one-year limit seems fully enforceable in the instant case, because courts should "apply the law in effect at the time it renders its decision." *Bradley v. Richmond Sch. Bd.,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974).

Nevertheless, courts have split on the issue of whether the new one-year limit should be applied to petitions filed after the effective date of the AEDPA. *Compare Harold v. United States,* 932 F.Supp. 705 (D.Md.1996) (applying one-year limit to Section 2255 petition filed after effective date of AEDPA); *United States v. Bazemore,* 929 F.Supp. 1567 (S.D.Ga.1996) (same), with *Smith v. United States,* 945 F.Supp. 1439 (D.Colo.1996) (creating a grace period after the effective date of AEDPA to file an otherwise untimely Section 2255 petition). A similar split in authority exists regarding the timeliness of petitions filed under 28 U.S.C. § 2254, which section the AEDPA also amended to provide a one-year limitations period. *Compare Curtis v. Class,* 939 F.Supp. 703 (D.S.D.1996) (applying one-year limit to Section 2254 petition filed after effective date of AEDPA), *with Duarte v. Hershberger,* 947 F.Supp. 146 (D.N.J.1996) (creating a grace period after the effective date of AEDPA to file an otherwise untimely Section 2254 petition); *Flowers v. Hanks,* 941 F.Supp. 765 (N.D.Ind.1996)

(same).[1] Retroactivity concerns appear to have troubled those courts that felt obliged to create a grace period following the effective date of the AEDPA.

In *Landgraf v. USI Film Prods.*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), the Supreme Court set forth its "most recent and definitive discussion of the retroactive application of new statutory provisions." *Satcher v. Netherland*, 944 F.Supp. 1222, 1246 (E.D.Va.1996). The Court in *Landgraf* held that "[w]hen a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach." *Landgraf*, 511 U.S. at 280, 114 S.Ct. at 1505. If the statute contains no express command, "the court must determine whether the new statute would have retroactive effect, *i.e.*, whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.*

The Court in *Landgraf* pointed out, however, that "[a] statute does not apply 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment or upsets expectations based in prior law." *Id.* at 269, 114 S.Ct. at 1499. Moreover, changes in procedural rules "may often be applied in suits arising before their enactment, without raising concerns about retroactivity.... Because rules of procedure regulate secondary rather than primary conduct, the fact that a new procedural rule was instituted after the conduct giving rise to the suit does not make application of the rule at trial retroactive." 511 U.S. at 275, 114 S.Ct. at 1502.

Recent cases applying *Landgraf* to potentially "retroactive" statutes of limitation inform this Court's analysis in the instant case. In *St. Louis v. Texas Worker's Compensation Comm'n*, 65 F.3d 43 (5th Cir.1995), the plaintiff filed his claim under the Age Discrimination in Employment Act after the effective date of the Civil Rights Act of 1991, but the events underlying plaintiff's claim occurred before the effective date of the 1991 Act. Under the law existing before the 1991 Act, plaintiff's lawsuit would have been timely filed; under the law as amended by the 1991 Act, plaintiff's lawsuit would have been untimely.

The Fifth Circuit held that the more restrictive time limitation as enacted by the 1991 Act governed and affirmed the district court's dismissal of the plaintiff's untimely complaint. The Court stated,

> This conclusion is supported by the Supreme Court's recent decision in *Landgraf*....
>
> To determine whether retroactivity concerns bar application of an intervening statute to any given case ... we must decide whether the intervening statute has a genuinely 'retroactive' effect....
>
> In this case, the change in the statute of limitations for filing ADEA claims does not have a retroactive effect; it governs the secondary conduct of filing suit, not the primary conduct of the defendants.
>
> ....
>
> Indeed, although the defendant frames the issue as one of retroactivity, the issue is not technically one of retroactivity, where a change in the law overturns an adjudication of rights that has already become final. In this case, the statute of limitations is applied to conduct that occurred after the statute's enactment—the plaintiff's filing of the complaint—not to the allegedly discriminatory acts of the defendant.

*Id.* at 46 (footnotes omitted)

Other courts interpreted *Landgraf* as the Fifth Circuit did in *Texas Worker's* and arrived at the same conclusion regarding the

---

1. One important aside: the issue before the Court today is NOT whether a pending Section 2255 motion filed *before* the effective date of the AEDPA should subsequently be subjected to the one-year limit provided by the AEDPA. Three Courts of Appeals have declined to apply AEDPA restrictions on Section 2255 and Section 2254 petitions to such petitions filed before the AEDPA became law. *United States v. Lopez*, 100 F.3d 113, 116–17 (10th Cir.1996); *Herrera v. United States*, 96 F.3d 1010, 1011–12 (7th Cir.1996); *Reyes v. Keane*, 90 F.3d 676, 679 (2d Cir.1996). Whether the Fourth Circuit would join those courts, and whether this Court agrees with those courts, is beyond the scope of this Court's opinion.

limitations period in the 1991 Act. *See, e.g., Garfield v. J.C. Nichols Real Estate,* 57 F.3d 662, 665 (8th Cir.1995); *Vernon v. Cassadaga Valley Cent. School Dist.,* 49 F.3d 886, 890 (2d Cir.1995). Additionally persuasive is the Sixth Circuit's reasoning when presented with similar circumstances in which Congress amended a federal statute to change the limitations period after the events underlying the claim. In *Forest v. United States Postal Serv.,* 97 F.3d 137 (6th Cir.1996), the Sixth Circuit squared its decision to apply the new limitations period with *Landgraf* by stating,

> A statute of limitation does not relate to the conduct of a defendant, but instead relates to the plaintiff's conduct in filing the claim.... Consequently, traditional retroactivity concerns are not present in this case.... [The new limitations period] was good law when Forest filed his complaint, and thus [we will apply the new limitations period.]

*Id.* at 140.

This Court agrees with the interpretation of *Landgraf* by the Fifth Circuit and the Sixth Circuit in applying new limitations periods, and this Court finds them persuasively analogous to the issue before the Court today. As Section 2255 reads both today and on the date on which petitioner filed his Section 2255 motion, petitioner's motion is untimely. Just as the Courts of Appeals in *Texas Worker's* and *Forest* enforced the limitations period in effect when the lawsuit was filed, this Court agrees with the district courts in *Harold* and *Bazemore* that the one-year limitations period in Section 2255 should be applied to Section 2255 motions filed after the effective date of the AEDPA. In the instant case, petitioner filed his Section 2255 motion after the AEDPA amended Section 2255 to include a one-year limitations period. Application of the limitations period renders petitioner's Section 2255 motion untimely. Therefore, because "Congress intended the new restrictions on habeas corpus procedures to have broad effect...." *Reyes,* 90 F.3d at 679, the Court must deny petitioner's motion.

This Court's conclusion bears restatement. In enacting Section 2255 reforms, Congress carefully set forth four possible events, the most recent from which the new one-year limitations period should be measured. None of these four events includes the effective date of the AEDPA itself. If Congress had intended to delay the enforcement of its reforms, Congress easily could have provided a grace period in this portion of the AEDPA. But neither here nor anywhere else in the AEDPA did Congress exhibit a desire to delay the enforcement of its reform of Section 2255. That conspicuous absence should dissuade the judicial enactment of that which Congress did not enact. To create a "grace period" in which prisoners can file untimely suits under Section 2255 despite the AEDPA's reforms is simply to resist Congress's efforts "to curb the abuse of the statutory writ of habeas corpus...." H.R.Conf.Rep 104–518 (1996), *reprinted in* 1996 U.S.C.C.A.N. 944.

This Court applauds Congress's efforts at reform; indeed, the Court encourages more reform. As one scholar wrote in encouraging Congress to pass the AEDPA:

> Reform is necessary for a number of reasons, not the least of which is to preserve the integrity of the writ itself. Concern for the efficient administration of justice tells us that federal courts cannot adequately handle the enormous number of petitions that are filed—many of which are stale or frivolous and contribute nothing to the just resolution of cases. Federal courts are burdened to the point that they may be impaired in allocating the time necessary to review legitimate claims. If the number of filings are weighed against the number of petitions granted, habeas review results in little incremental justice. The habeas corpus review process is a redundant litigious process that imposes significant costs on the criminal justice system.

Michael O'Neill, *On Reforming The Federal Writ of Habeas Corpus,* 26 Seton Hall L.Rev. 1493, 1528 (1996).

### III. Motion to Appear Pro Hac Vice

■ Diane S. Lepley, Esq., has filed a motion to enter an appearance *pro hac vice* in this case. Ms. Lepley, however, has signed no pleading or supporting document in this case; apparently, she does not claim authorship of any document relating to this case at all.

Notably, the true author of plaintiff's putatively *pro se* pleadings and supporting documents appears to have had formal legal training. Ghost-writing by an attorney of a *"pro se"* plaintiff's pleadings has been condemned as both unethical and a deliberate evasion of the responsibilities imposed on attorneys by Federal Rule of Civil Procedure 11. *Johnson v. Bd. of County Comm'rs,* 868 F.Supp. 1226, 1231–32 (D.Colo.1994), *aff'd as modified* 85 F.3d 489 (10th Cir.1996); *see also* Virginia Legal Ethics Op. 1592 (1994). Thus, if in fact an attorney has ghost-written plaintiff's pleadings in the instant case, this opinion serves as a warning to that attorney that this action may be both unethical and contemptuous. *Johnson,* 868 F.Supp. at 1232.

In any event, because Ms. Lepley has signed no pleading in this case, and because plaintiff's motion is clearly time-barred, the Court sees no need to grant Ms. Lepley's motion to appear *pro hac vice.*

### IV. Conclusion

The Section 2255 motion filed by petitioner is untimely. Therefore, his motion is hereby **DENIED.** Further, Diane S. Lepley's motion to enter an appearance *pro hac vice* is also hereby **DENIED.**

**IT IS SO ORDERED.**