**UNITED STATES of America**

v.

**William Lee TIMBER.**

**No. CRIM.A.1:89–CR–0189–JOF.**

United States District Court,
N.D. Georgia,
Atlanta Division.

May 29, 1998.

*County Public Health Unit,* 601 So.2d 1318, 1319 (Fla. 2d DCA 1992).

William Lee Timber, Talladega, AL, pro se.

David Wright, Assistant United States Attorney, Northern District of Georgia, Atlanta, GA, for Defendants.

## ORDER

FORRESTER, District J.

This case is before the court on two motions to vacate, set aside, or correct the sentence pursuant to 28 U.S.C. § 2255. Defendant William Lee Timber was convicted on November 2, 1989 of conspiracy to possess cocaine with the intent to distribute in violation of 21 U.S.C. § 846. On May 10, 1990, this court sentenced him to one hundred eighty months of incarceration and fined him $5,000.00. Defendant appealed this court's judgment to the United States Court of Appeals for the Eleventh Circuit, and it was affirmed on November 7, 1991. That affirmance was issued as mandate on December 3, 1991, and a certified copy of that order was received by this court on December 9, 1991.

Defendant's first motion was received by this court on April 28, 1997, and it alleges two grounds upon which he claims that his sentence should be vacated, set aside, or reduced. First, Defendant asserts that he received ineffective assistance of counsel during sentencing because his counsel failed to object to an improper enhancement based on an amount of cocaine erroneously attributed to him. Second, he contends that the court was in plain error when it failed to make factual findings in response to his counsel's objections to certain information contained in his presentence report. Defendant filed a second, amended § 2255 motion on July 14, 1997 in which he restated his original two assertions and added three additional grounds for relief. The court construes this second pleading as a motion to amend his pending § 2255 to assert the new claims.

Section 2255, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA" or the "Act"), Pub.L. 104–132, 110 Stat. 1214 (1996), provides that a motion to vacate, set aside, or reduce a sentence must be brought within one year of the latest of: the date on which the judgment of conviction becomes final; the date on which an impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed; the date on which the right asserted was initially recognized by the Supreme Court; or the date on which the facts sup-

porting the claim or claims presented could have been discovered through the exercise of due diligence. *See* 28 U.S.C. § 2255. Here, Defendant does not assert that he was barred from bringing this motion by any governmental action, that his sentence should be vacated, reduced or set aside due to a right newly recognized by the Supreme Court, or that new facts have recently come to light. Consequently, under a strict application of the amended statute, Defendant's motion would be time barred if brought more than one year after his conviction became final.[1]

Prior to the 1996 amendments, there was no time limitation placed upon a prisoner's ability to seek relief through § 2255. *See Calderon v. United States District Court for the Central District of California,* 128 F.3d 1283, 1286 (9th Cir.1997). Thus, before this time, Defendant had an unfettered right to bring a claim more than a year after his conviction was final. Retroactivity concerns do not generally bar a changed statute of limitations from being applied in a suit filed after the amendment's effective date. *See Forest v. United States Postal Serv.,* 97 F.3d 137, 139–40 (6th Cir.1996); *Vernon v. Cassadaga Valley Cent. Sch. Dist.,* 49 F.3d 886, 890 (2d Cir.1995). The Supreme Court has stated, however, that:

> [A]ll statutes of limitation must proceed on the idea that the party has full opportunity afforded him to try his right in the courts. A statute could not bar the existing rights of claimants without affording this opportunity; if it should attempt to do so, it would not be a statute of limitations, but an unlawful attempt to extinguish

rights.... It is essential that such statutes allow a reasonable time after they take effect for the commencement of suits upon existing causes of action.

*Texaco, Inc. v. Short,* 454 U.S. 516, 527, n. 21, 102 S.Ct. 781, 70 L.Ed.2d 738; *see also Block v. North,* 461 U.S. 273, 286 n. 23, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983) ("The Constitution, however, requires that statutes of limitation must 'allow a reasonable time after they take effect for the commencement of suits upon existing causes of action' ") (quoting *Texaco,* 454 U.S. at 527 n. 21, 102 S.Ct. 781); *Derstein v. Van Buren,* 828 F.2d 653, 655 (10th Cir.1987) (refusing to apply retroactively a new limitations period to pre-accrued claims); *Hanner v. Mississippi,* 833 F.2d 55, 57 (5th Cir.1987) (shortened limitations period must first provide plaintiffs with a reasonable time to file). As a result, the application of an amended statute of limitations without allowing a reasonable amount of time for those prisoners with existing causes of action to file suit would raise doubts as to the constitutionality of the new statute.

In order to avoid addressing this possible constitutional deficiency, many courts have read the amended section 2255 to include a "reasonable time" after its effective date of April 24, 1996 during which prisoners whose convictions had already become final could file their collateral attacks in federal court. *See United States v. Lopez,* 100 F.3d 113, 116–17 (10th Cir.1996); *United States v. Simmonds,* 111 F.3d 737, 745 (10th Cir.1997); *Calderon,* 128 F.3d at 1287; *Peterson v. Demskie,* 107 F.3d 92, 93 (2d Cir.1997);

---

1. Section 2255 does not define when a judgment of conviction becomes final. *See United States v. Bazemore,* 929 F.Supp. 1567, 1569 (S.D.Ga. 1996). In the context of § 2244 motions, however, the AEDPA states that a conviction is considered final at "the conclusion of direct review or the expiration of the time for seeking such review." *See* AEDPA, § 101(d)(1)(A). In determining when a conviction becomes final for the purposes of the statute of limitations in § 2255 motions, the three possibilities are: the date this court entered a judgment against Defendant; the date the Eleventh Circuit Court of Appeals' mandate affirming this court's ruling became the judgment of the court; or the date on which Defendant's opportunity to seek a writ of certiorari expired. *See Clarke v. United States,* 955

F.Supp. 593, 595 (E.D.Va.1997). This court finds that a conviction should be treated as final at the date on which the mandate of the Eleventh Circuit affirming this court's action becomes the judgment of the court. In the instant case, this occurred in December of 1991. The mandate is issued by the court of appeals seven days after the expiration of time for the filing of a motion for rehearing, and may be stayed by motion pending a petition for certiorari to the Supreme Court. *See* Fed. R.App. P. 41. Consequently, this date allows for the virtual conclusion of the direct appeal process, thus ensuring that prisoners are not forced to seek § 2255 relief before they know if a successful appeal has obviated the need for such relief.

*Lindh v. Murphy,* 96 F.3d 856, 866 (7th Cir.1996), *rev'd on other grounds,* — U.S. ——, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997); *Burns v. Morton,* 134 F.3d 109 (3rd Cir. 1998); *United States v. Flores,* 135 F.3d 1000 (5th Cir.1998); *Green v. Wharton,* 1997 WL 404278 (N.D.Ga.1997) (Murphy, J.); *Parker v. Johnson,* 988 F.Supp. 1474 (N.D.Ga.1998) (Hunt, J.); *Holmes v. Wharton,* 1997 WL 115837 (N.D.Ga.1997) (Camp, J.); *Zuluaga v. United* States, 971 F.Supp. 616 (D.Mass.1997). Other courts, however, have taken the position that the application of the new limitations period does not pose a retroactivity problem and is more consistent with congressional intent in passing the AEDPA. *See Clarke v. United States,* 955 F.Supp. 593 (E.D.Va.1997) (declining to allow a grace period and applying the one-year limitations period as the law in effect at the time the case arose); *United States v. Bazemore,* 929 F.Supp. 1567 (S.D.Ga.1996) (same); *Curtis v. Class,* 939 F.Supp. 703 (D.S.D.1996) (same); *Vargas v. United States,* 1997 WL 528303 (D.R.I.1997) (same). This court agrees that federal statutes should be construed to avoid serious doubts as to their constitutionality. *See Communications Workers v. Beck,* 487 U.S. 735, 762, 108 S.Ct. 2641, 101 L.Ed.2d 634 (1988); *Ashwander v. TVA,* 297 U.S. 288, 348, 56 S.Ct. 466, 80 L.Ed. 688 (1936). Thus, the court hereby adopts the approach of those courts that allow a reasonable time after the effective date of the AEDPA during which prisoners whose convictions have already become final may file their claims.

■ Among the circuit courts that have adopted this approach, however, two different views have emerged as to what constitutes a "reasonable time." On the one hand, the Third, Fifth, Seventh, Ninth, and Tenth Circuits have adopted the firm rule that one year constitutes a "reasonable time" for a prisoner whose conviction became final prior to the effective date of the AEDPA to file a section 2255 motion. *See United States v. Flores,* 135 F.3d 1000, 1006 (5th Cir.1998); *Burns v. Morton,* 134 F.3d 109, 111 (3d Cir.1998); *Caldaron,* 128 F.3d at 1286–87; *United States v. Simmonds,* 111 F.3d 737 (10th Cir.1997); *Lindh v. Murphy,* 96 F.3d 856 (7th Cir.1996), *rev'd on other grounds,* — U.S. ——, 117 S.Ct. 2059, 138

L.Ed.2d 481 (1997). Under this view, therefore, a prisoner with a conviction that became final prior to April 24, 1996 would have until April 23, 1997 to file his challenge in federal court. In contrast, the Second Circuit has adopted a more flexible "ad hoc" approach as to what constitutes a "reasonable time" for such prisoners to file their motions. *See Peterson v. Demskie,* 107 F.3d 92 (2d Cir. 1997). In rejecting a firm one-year rule, the Second Circuit explained that "[i]n circumstances ... where a state prisoner has had several years to contemplate bringing a federal habeas corpus motion, we see no need to accord a full year after the effective date of the AEDPA." *Peterson,* 107 F.3d at 93.

In light of the lack of Eleventh Circuit guidance on this issue, district courts in this circuit have split on which of these two approaches to follow. *Compare Parker v. Johnson,* 988 F.Supp. 1474 (N.D.Ga.1998) (Hunt, J.) (adopting bright line one-year period), *with Syms v. Chapman,* No. CV 497–128, 1997 WL 561313 (Edenfield, J.) (S.D.Ga. Aug. 19, 1997) (adopting more flexible construction of what constitutes a "reasonable time"); *see also Bazemore,* 929 F.Supp. at 1567 (declining to allow a grace period at all); *Holmes,* 1997 WL 115837 (finding a grace period to be appropriate, but declining to decide what constitutes a reasonable time). The Fifth Circuit in *Flores* offers perhaps the best justification for the adoption of a bright line "one year" grace period. In its opinion, the Fifth Circuit recognized that a strict application of the AEDPA would impermissibly close the courthouse doors on those prisoners with convictions over a year old who had the right to bring federal habeas motions in the days preceding the enactment of the new time limit. *Flores,* 135 F.3d at 1004. In determining what would constitute a "reasonable time" for these prisoners to file their motions, the court quoted with approval a rule of statutory construction from an old state case providing that "a reasonable time shall be the balance of the time unexpired according to the law as it stood when the amending act is passed, provided that it shall never exceed the time allowed by the new statute." *Id.* at 1005 (quoting *Culbreth v. Downing,* 121 N.C. 205, 28 S.E. 294 (1897)). Since there was no established time limit for

filing federal post-conviction relief prior to the AEDPA, the Fifth Circuit adopted the new one-year period contained in its language as a presumptive "reasonable time." *Id.* at 1006. The Fifth Circuit also stated that it adopted this bright-line rule in part due to its "comparative ease of administration, consistency, and predictability over a less specific 'reasonable time' approach." *Id.* at 1006 n. 19 (citations omitted).

■ Regardless of the ease of administration of the one-year approach, however, this court cannot overlook the fact that these courts' incorporation of a bright-line rule into a statute is a clear example of judicial legislation. *See Clarke,* 955 F.Supp. at 597; *Syms,* 1997 WL 561313 at *3. In drafting the AEDPA, Congress carefully considered how the one-year statute of limitations would operate. In an effort to address fairness concerns, Congress provided four specific dates from which the one-year period could commence. As discussed *supra,* the one-year time limit does not run from the date a conviction becomes final if the government prevented the prisoner from filing a motion, if the Supreme Court later recognized a new right that was applicable to the prisoner's case, or if the facts supporting the claim could not have been discovered without due diligence. Since Congress constructed the statute to deal with these various situations, it is clear that if it had been concerned with providing a one-year grace period for prisoners whose convictions became final prior to enactment, it could easily have provided an additional clause in the statute dealing with that situation. *See United States v. Smith,* 966 F.Supp. 408 (E.D.Va.1997). Those courts that have adopted a strict one-year rule, therefore, have essentially engaged in legislative action by engrafting a new subsection into the body of the statute. *Syms,* 1997 WL 561313 at *3; *see, e.g., Morgan v. City of Des Moines,* 60 F. 208 (8th Cir.1894) (adding exception to statute of limitations contained

in statute would be an act of judicial legislation) (citations omitted).

It is true that courts have the power to suspend the running of a limitations period for reasons not listed in a statute. *See Amy v. City of Watertown,* 130 U.S. 320, 9 S.Ct. 537, 32 L.Ed. 953 (1889).[2] The Supreme Court, however, has cautioned that courts should be hesitant to add exceptions and should only do so in limited circumstances as, otherwise, they would be making the law instead of administering it. *Id.* at 323, 9 S.Ct. 537. As a result, even though a court may have drafted a statute in a different manner than the form the Legislature ultimately chose, it should be mindful that it is the role of the Legislative Branch and not the court to enact and amend statutory provisions. *See Addison v. Holly Hill Fruit Products,* 322 U.S. 607, 615, 64 S.Ct. 1215, 88 L.Ed. 1488 (1944) ("[l]egislation introducing a new system is at best empirical, and not infrequently administration reveals gaps or inadequacies of one sort or another that may call for amendatory legislation. But it is no warrant for [a court to extend] a statute that experience may disclose that it should have been made more comprehensive"); *Smith,* 966 F.Supp. at 410.

[5] As stated above, the court is compelled by constitutional concerns to allow some grace period for filing after the effective date of the AEDPA. Statutory construction, however, should not be stretched to a point at which it is contrary to the intention of Congress and no longer reflects the policy choices made by elected representatives. *See Communications Workers,* 487 U.S. at 762, 108 S.Ct. 2641. In enacting the AEDPA, Congress intended "to curb the abuse of the statutory writ of habeas corpus." *Zuluaga,* 971 F.Supp. at 618, *quoting* H.R. Conf. Rep. 104–518, at 111 (1996), *reprinted in* 1996 U.S.C.C.A.N. 944, 944. Thus, it appears that Congress intended for

---

**2.** In *Amy,* the plaintiff sought to add an additional exception to a statute of limitations in which the Legislature had already included several exceptions for when the defendant was out of state, when he was an alien subject or a citizen of a country at war with the United States, when the person entitled to bring the claim was insane, underage, or imprisoned, when the action's com-

mencement had been stayed by an injunction, and when a party bringing an action for fraud discovered the fraud. *Id.* at 323, 9 S.Ct. 537. The Supreme Court affirmed the lower court's refusal to add an extra exception to the statute of limitations for situations where the defendant had eluded service of process. *Id.* at 327, 9 S.Ct. 537.

the Act to have some application to convictions that became final prior to the effective date of the AEDPA. *Id.* As a result, this court will not apply a strict one-year grace period within which prisoners whose convictions became final prior to the enactment of the AEDPA may file their § 2255 motions. Instead, the court adopts the view of the Second Circuit that the determination of whether a motion was filed within a reasonable time after the effective date of the AEDPA should be made based upon the unique facts and circumstances present in each case. Without a showing that the motion was in preparation at, or was filed within a reasonable period after, the effective date of the AEDPA, a § 2255 motion filed after the passage of the AEDPA and more than one year after the Defendant's conviction became final is time barred.

 In the instant case, Defendant's conviction has been final since December of 1991, yet this court did not receive his § 2255 motion until April 28, 1997. The court recognizes that, under the mailbox rule, a *pro se* prisoner's pleadings should be treated as filed in court on the day that they were handed to prison authorities for mailing. *United States v. O'Kaine,* 971 F.Supp. 1479 (S.D.Ga.1997); *cf. Houston v. Lack,* 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988) (*pro se* prisoner's appeal considered "filed" on date that he delivered it to prison authorities). As a result, since Defendant's original pleading is signed and dated April 22, 1997, the court will consider that date to be the day it was filed with the Clerk's Office. *See O'Kaine,* 971 F.Supp. at 1480 (treating 2255 motion signed by *pro se* prisoner on April 22, 1997 and received by court on April 28, 1997 as filed on the day it was signed); *Esquilin v. Artuz,* 1998 WL 2827 (S.D.N.Y., Jan.6, 1998) (same). Regardless of the exact date of filing, the facts of this case illustrate the wisdom of an ad hoc determination of reasonableness. The concept underlying the doctrine that a reasonable time must be allowed after the enactment of a new period of limitation is that of fundamental fairness. It simply cannot be said, however, that Defendant has not had a fair opportunity to obtain a review of his sentence. One of the sentencing issues now raised by Defendant could have been raised on direct appeal.

Indeed, the Eleventh Circuit has reviewed Defendant's sentence and, given the length of the sentence, it is supposed that the appeals court would have noticed any plain error. While the precise issues now raised by Defendant may not have been raised in that appeal, the sentence itself has been reviewed. More importantly, Mr. Timber had over four years prior to the enactment of the AEDPA to raise the issues now asserted. They are not arcane, and an individual faced with a sentence in excess of ten years has ample motivation to explore means to have that sentence reduced. Defendant clearly had more than sufficient time to contemplate and file such an attack.

As discussed above, the law provides Defendant an extra measure of fairness in allowing a reasonable time after the imposition of the new limitation to file a claim. Defendant's first motion, however, was filed three hundred sixty-three days after the effective date of the AEDPA and more than five years after his conviction became final. He has offered no reason for the delay, and the court cannot conceive of one. At some point finality of judgment becomes a superior value to administrative consistency and predictability. Accordingly, Defendant's initial motion is untimely because it was not filed within a reasonable time after the effective date of the AEDPA. *See, e.g., Esquilin,* 1998 WL 2827 (dismissing as untimely a § 2255 motion filed three hundred sixty three days after the effective date of the AEDPA and more than two years after the date the conviction became final). Moreover, since Defendant's motion to amend his § 2255 motion to add additional grounds for relief was filed more than three months after his initial pleading, it is also denied as untimely.

Accordingly, Defendant's motions to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 [44–1, 46–1] are DENIED as untimely.